UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL JAMES,<br><br>                          Plaintiff,<br><br>       -against-<br><br>KANSAS CITY SOUTHERN, ROBERT J.<br>DRUTEN, PATRICK J. OTTENSMEYER,<br>LYDIA I. BEEBE, LU M. CÓRDOVA,<br>ANTONIO O. GARZA, JR., DAVID<br>GARZA-SANTOS, JANET H. KENNEDY,<br>MITCHELL J. KREBS, HENRY J. MAIER,<br>and THOMAS A. MCDONNELL,<br><br>                          Defendants. | CASE NO.: _____ |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Michael James ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Kansas City Southern ("KCS" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with KCS, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger of KCS with Canadian National Railway Company ("CN"), and Brooklyn

Merger Sub, Inc., ("Merger Sub"), a wholly owned subsidiary of CN (collectively CN and Merger Sub are referred to as "CN").

2.      On May 21, 2021, CN and KCS entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into KCS, with KCS surviving the merger as a wholly owned subsidiary of CN (the "Proposed Transaction").  Pursuant to the terms of the Merger Agreement, for each share of KCS common stock outstanding KCS stockholders will receive (i) 1.129 CN common shares; and (ii) $200.00 in cash, without interest ("Merger Consideration").

3.      On June 22, 2021, in order to convince KCS's public common stockholders to vote in favor of the Proposed Transaction, Defendants, together with CN took a step forward and authorized the filing of a materially incomplete and misleading Joint Form F-4 Registration Statement/Proxy (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act, seeking KCS stockholder approval of the Proposed Transaction.

4.      In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) financial projections for KCS and CN; and (ii) the key inputs for the financial analyses performed by BofA Securities ("BofA") to support their fairness opinions.

5.      The Proposed Transaction, which is subject to various regulatory approvals, is expected to close in the second half of 2022 and the special meeting of the Company's stockholders to vote on the Proposed Transaction can be scheduled at any time.  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting of KCS stockholders so Plaintiff can properly exercise his corporate voting rights.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plaintiff and KCS's public common stockholders sufficiently in advance of the special meeting of the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Indeed, KCS's common stock is listed and traded on the New York Stock Exchange ("NYSE"), which is also headquartered in this District.  Moreover, MacKenzie Partners, Inc., KCS's proxy solicitor, is headquartered in this District, and the closing of the Proposed Transaction will take place in this District, at the offices of Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019.

## PARTIES

11.    Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of KCS common stock.

12.    Defendant KCS is a Delaware corporation that maintains its principal place of business at 427 West 12th Street, Kansas City, Missouri 64105.  KCS's common shares are traded on the NYSE under the ticker symbol "KSU."

13.    Individual Defendant Robert J. Druten ("Druten") has served as a member of the Board since 2004 and is the Chairman of the Board.

14.    Individual Defendant Patrick J. Ottensmeyer ("Ottensmeyer") has served as a member of the Board since 2016 and is the Company's President and Chief Executive Officer.

15.    Individual Defendant Lydia I. Beebe ("Beebe") has served as a member of the Board since 2017.

16.    Individual Defendant Lu M. Córdova ("Córdova") has served as a member of the Board since 2010.

17.    Individual Defendant Antonio O. Garza, Jr. ("Garza"), has served as a member of the Board since 2010.

18.    Individual Defendant David Garza-Santos ("Garza-Santos") has served as a

member of the Board since 2016.

19.     Individual Defendant Janet H. Kennedy ("Kennedy") has served as a member of the Board since 2019.

20.     Individual Defendant Mitchell J. Krebs ("Krebs") has served as a member of the Board since 2017.

21.     Individual Defendant Henry J. Maier ("Maier") has served as a member of the Board since 2017.

22.     Individual Defendant Thomas A. McDonnell ("McDonnell") has served as a member of the Board since 2003.

23.     The defendants identified in paragraphs 13 through 22 are collectively referred to herein as the "Individual Defendants" or the "Board."  The Individual Defendants together with KCS, are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      Background of the Company and the Proposed Transaction**

24.     KCS is a holding company with domestic and international rail operations in North America that are strategically focused on the growing north/south freight corridor connecting key commercial and industrial markets in the central United States ("U.S.") with major industrial cities in Mexico.

25.     KCS controls and owns all of the stock of The Kansas City Southern Railway Company ("KCSR"), a U.S. Class I railroad founded in 1887. KCSR serves a ten-state region in the midwest and southeast regions of the United States and has the shortest north/south rail route between Kansas City, Missouri and several key ports along the Gulf of Mexico in Alabama, Louisiana, Mississippi and Texas.

26.     KCS also controls and owns all of the stock of Kansas City Southern de México, S.A. de C.V. ("KCSM"). Through its 50-year concession from the Mexican government. KCSM operates a key commercial corridor of the Mexican railroad system and has as its core route the most strategic portion of the shortest, most direct rail passageway between Mexico City and Laredo, Texas. Laredo is a principal international gateway through which a substantial portion of rail and truck traffic between the United States and Mexico crosses the border. KCSM serves most of Mexico's principal industrial cities and three of its major seaports. KCSM's rail lines provide exclusive rail access to the United States and Mexico border crossing at Nuevo Laredo, Tamaulipas. Under the Concession, KCSM has the right to use and operate the southern half of the rail bridge at Laredo, Texas, which spans the Rio Grande River between the United States and Mexico. The Company owns the northern half of this bridge through its ownership of Mexrail, Inc. ("Mexrail").  KCSM also provides exclusive rail access to the port of Lazaro Cardenas on the Pacific Ocean. The Mexican government developed the port at Lazaro Cardenas principally to serve Mexican markets and as an alternative to the U.S. west coast ports for Asian and South American traffic bound for North America.

27.     KCS further wholly owns Mexrail which, in turn, wholly owns The Texas Mexican Railway Company ("Tex-Mex"). Tex-Mex owns a 160-mile rail line extending from Laredo, Texas to the port city of Corpus Christi, Texas, which connects the operations of KCSR with KCSM.

28.     The KCS coordinated rail network (KCSR, KCSM and Tex-Mex, including trackage rights) comprises approximately 7,100 route miles extending from the midwest and southeast portions of the United States south into Mexico and connects with all other Class I railroads, providing shippers with an effective alternative to other railroad routes and giving direct

access to Mexico and the southeast and southwest United States through alternate interchange hubs.

29.     Additionally, Panama Canal Railway Company ("PCRC"), an unconsolidated joint venture company owned equally by KCS and Mi-Jack Products, Inc. ("Mi-Jack"), was awarded a concession from the Republic of Panama to reconstruct and operate the Panama Canal Railway, a 47-mile railroad located adjacent to the Panama Canal that provides international container shipping companies with a railway transportation alternative to the Panama Canal. The concession was awarded in 1998 for an initial term of 25 years with an automatic renewal for an additional 25-year term. The Panama Canal Railway is a north-south railroad traversing the isthmus of Panama between the Atlantic and Pacific oceans.

30.     On May 21, 2021, KCS's Board caused the Company to enter into the Merger Agreement with CN.  Pursuant to the terms of the Merger Agreement, each share of KCS common stock issued and outstanding prior to the consummation of the Proposed Transaction will be exchanged for: (i) 1.129 CN common shares; and (ii) $200.00 in cash, without interest.

31.     On May 21, 2021 KCS and CN issued joint a press release announcing the Proposed Transaction, which stated in relevant part:

CN TO COMBINE WITH KANSAS CITY SOUTHERN

*CN and KCS enter into a definitive merger agreement to create the premier railway for the 21st century, bring together highly complementary networks to benefit customers and enhance competition*

*Anticipated to be accretive to CN's Adjusted Diluted EPS1 in the first full year following CN assuming control of KCS*

*Expected EBITDA synergies approaching $1 billion annually, with a significant proportion expected from converting truck traffic from busy interstates and highways for better fuel efficiency at a lower cost*

**MONTREAL and KANSAS CITY, Mo., May 21, 2021** — CN (TSX: CNR,

NYSE: CNI) and Kansas City Southern (NYSE: KCS) ("KCS") today announced that they have entered into a definitive merger agreement to create the premier railway for the 21st century.

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, KCS shareholders will receive $3252 per common share based on CN's May 13, 2021 offer, which implies a total enterprise value of $33.6 billion, including the assumption of approximately $3.8 billion of KCS debt. KCS shareholders will receive $200 in cash and 1.129 shares of CN common stock for each KCS common share, with KCS shareholders expected to own 12.6% of the combined company. This represents an implied premium of 45% when compared to KCS' unaffected closing stock price on March 19, 2021. KCS' preferred shareholders will receive $37.50 in cash for each preferred share.

"We are thrilled that KCS has agreed to combine with CN to create the premier railway for the 21st century. I would like to thank the numerous stakeholders of both companies who have demonstrated overwhelming support for this compelling combination, and we look forward to delivering the many benefits of this pro-competitive transaction to them. I am confident that together with KCS' experienced and talented team, we will meaningfully connect the continent – enhancing competition, offering more choice for customers, and driving environmental stewardship and shareholder value."

- JJ Ruest, president and chief executive officer of CN (fn omitted)

The combination is expected to be accretive to CN's Adjusted Diluted EPS, excluding incremental transaction-related amortization, in the first full year following CN's acquisition of control of KCS, and is expected to generate double-digit accretion upon the full realization of synergies thereafter.

All figures in U.S. dollars, except where noted. All conversions between Canadian dollars and U.S. dollars are based on a 0.827 foreign exchange rate as of May 12, 2021. Where applicable, figures are based on the CN closing share price on the NYSE of $110.76 as of May 12, 2021.

"As North America's most customer-focused transportation provider, we are excited about this combination with CN, which will provide customers access to new single-line transportation services at the best value for their transportation dollar, and increase competition among the Class 1 railroads. Our companies' cultures are strongly aligned, and we share a commitment to environmental stewardship, safe operations, reliable service and outstanding performance. As a larger continental enterprise with complementary routes and an enhanced platform for revenue growth, capital investment, and job creation, we will be positioned to deliver on the transaction's powerful synergies which will create new growth opportunities for our customers, employees, labor partners, communities and shareholders."

- Patrick J. Ottensmeyer, president and chief executive officer of KCS

"KCS is the ideal partner for CN to connect the continent, helping to drive North American trade and economic prosperity. We are confident in our ability to gain the necessary regulatory approvals and complete the combination with KCS, and we look forward to combining with KCS to create new opportunities, more choice and a stronger company."

- Robert Pace, chair of the board of CN

**Compelling Strategic and Financial Rationale**

***Creates the premier railway for the 21st century.*** The combination of CN and KCS will further accelerate CN's industry-leading growth profile by connecting North America's industrial corridor to create new options for shippers and new revenue for the combined company. A CN-KCS combination will substantially help realize the many benefits of the USMCA, bringing it to life in a meaningful way.

***Brings together highly complementary networks to benefit customers.*** CN and KCS will create a safer, faster, cleaner and stronger railway that is ideally positioned to support the growth of an emerging consumption-based economy through better service options and customer choice.

***Enhances competition.*** This combination will create an express route that connects the U.S., Mexico and Canada with a seamless single-owner, single-operator service, and preserves access to all existing gateways to enhance route choices and ensure robust price competition.

***Delivers significant value to KCS shareholders.*** CN's proposal delivers an implied premium of 45% to KCS shareholders, as well as participation in the significant upside of the combined company. Additionally, KCS shareholders will have the ability to receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021. This combination will also significantly expand the combined company's total addressable market ("TAM") — CN and KCS would target $8 billion of TAM opportunity while supporting growth across the rapidly growing USMCA network.

***Presents compelling synergies and pro-forma financial metrics.*** CN currently estimates that the combination would result in EBITDA synergies approaching $1 billion annually, with the vast majority of synergies coming from additional revenue opportunities. CN anticipates the transaction to be accretive to CN's adjusted diluted earnings per share in the first full year following CN assuming control of KCS.

***Accelerates innovation.*** CN and KCS share cultures that value safety, service and

environmental stewardship. CN and KCS will accelerate innovation and investment as CN brings its industry-leading safety technology and fuel efficiency to the KCS network.

***Yields demonstrable benefits for the environment.*** The combination will yield demonstrable benefits for the environment by converting significant volumes of truck traffic onto rails, delivering better fuel efficiency at lower cost. CN has the ability to remove more than 300 trucks from the road with every additional freight train. Because trains are 4 to 5 times more fuel-efficient than trucks, the combined company will also have an opportunity to realize a 75% reduction in greenhouse gas emissions, resulting in cleaner air for local communities along CN's line. While preventing thousands of tons of emissions from entering the atmosphere every day, the expected conversion of truck traffic to rails will also reduce traffic congestion in these regions.

***Creates opportunities for local communities.*** Upon the closing of the transaction, CN will maintain corporate headquarters in Montreal, Canada, and establish Kansas City, Missouri, as the combined company's United States headquarters. The Mexico headquarters will remain in Mexico City and the operations center in Monterrey. CN will make significant infrastructure investments in key communities across the new network, including Illinois, Missouri, Michigan, Louisiana and Texas, meaning more economic opportunity and more jobs.

**Financing**

The cash portion of the consideration will be funded through a combination of cash-on-hand and approximately $19 billion of new debt. Upon closing of the transaction and including the assumption of approximately $3.8 billion of KCS debt, we expect to have outstanding debt of approximately $33 billion, representing a leverage ratio of 4.5x pro forma 2021 EBITDA[fn omitted], and we expect to maintain an investment grade credit rating. Based on the proposed exchange ratio and CN's current quarterly dividend of C$0.615 per CN share, KCS shareholders are expected to receive the equivalent of $2.30 in annual dividends per KCS share.

**Approvals and Timing**

CN and KCS are confident in their ability to obtain all necessary regulatory approvals, including from the Surface Transportation Board ("STB") and the Federal Economic Competition Commission (COFECE) and Federal Telecommunications Institute (IFT) in Mexico.

CN has proposed a "plain vanilla" voting trust. Upon KCS shareholder approval of the transaction, and satisfaction of customary closing conditions, CN will acquire KCS shares and place them into the voting trust. KCS shareholders will receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021.

Following this step, the STB and other regulatory authorities must approve CN's control of KCS. The completion of the transaction is expected to take place in the second half of 2022. Upon completion, CN and KCS will begin the integration process to realize the significant benefits of the combination for their stakeholders.

\* \* \*

**Advisors**

J.P. Morgan and RBC Capital Markets are acting as CN's financial advisors, and Centerview Partners LLC is also serving as a financial advisor. Cravath, Swaine & Moore LLP, Sidley Austin LLP, Norton Rose Fulbright LLP, Torys LLP, Agon and Stikeman Elliot LLP are providing legal counsel to CN.

BofA Securities and Morgan Stanley & Co. LLC are serving as financial advisors to Kansas City Southern. Wachtell, Lipton, Rosen & Katz, Baker & Miller PLLC, Davies Ward Phillips & Vineberg LLP, WilmerHale, and White & Case, S.C. are serving as legal counsel to Kansas City Southern.

\* \* \*

## II.      The Registration Statement Omits Material Information

32.      Then on June 22, 2021, Defendants filed a materially incomplete and misleading Registration Statement with the SEC.  The special meeting of KCS stockholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

A.      <u>Materially Misleading Statements and Omissions Regarding KCS and CN's Financial Projections</u>

33.      The Registration Statement fails to provide material information concerning KCS unaudited financial projections by the Company management for the period from FY2021

11

through FY2029, and KCS management projections for CN for the period from FY2021 through FY2029 which were relied upon by the Board in recommending the Proposed Transaction, and by BofA in its financial analysis to issue its fairness opinion.  Registration Statement, 71, 80-84. The Registration Statement discloses these management-prepared financial projections which are materially misleading.  *Id.* 83-84.  These non-public financial projections were provided to the Board to support its recommendation of the Proposed Transactions, and to BofA in rendering its fairness opinions with respect to the Proposed Transaction. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that KCS management provided to the Board and the financial advisors.  *Id.*

34.     For the KCS unaudited financial projections, the Registration Statement provides values for non-GAAP financial metrics: (i) EBITDA; (ii) Unlevered Free Cash Flows; and (iii) earnings per share ("EPS") as adjusted for 2021 through 2029. The Registration Statement, however, fails to provide: (i) the line items and assumptions underlying the calculation of EBITDA; (ii) the line items and assumptions underlying the calculation of Unlevered Free Cash Flows; (iii) the line items and assumptions underlying EPS as adjusted; and (iv) a reconciliation of all non-GAAP to GAAP metrics.  *Id.* 83.  The omission of this information renders the projections disclose by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a).

35.     For the KCS management projections for CN, the Registration Statement provides values for non-GAAP financial metrics: (i) adjusted EBITDA;  and (ii) Unlevered Free Cash Flows. The Registration Statement, however, fails to provide: (i) the line items and assumptions underlying the calculation of adjusted EBITDA; (ii) the line items and assumptions underlying the calculation of Unlevered Free Cash Flows; and (iii) a reconciliation of all non-

12

GAAP to GAAP metrics.  *Id.* 84.  The omission of this information renders the projections disclose by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a).

36.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

37.     In the present case, Defendants' failure to disclose the line items used to calculate: (i) EBITDA for KCS; (ii) adjusted EBITDA for CN; (iii) Unlevered Free Cash Flows for KCS and CN; (iv) EPS as adjusted for KCS; or (v) or to provide the requisite reconciliation of all non-GAAP to GAAP metrics similarly renders the Registration Statement materially misleading.

38.     Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given KCS's projected cash flows?  Without the line items underlying KCS's unlevered free cash flows the Company's shareholders will not be able to

properly assess this critical question and evaluate the fairness of the Merger Consideration.

39.     For this reason, Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

40.     If a Registration Statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).   Accordingly, Defendants have disclosed some of the information related to the projections relied upon by BofA, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on pages 196-197 of the Registration Statement misleading.

> B.     <u>Materially Incomplete and Misleading Disclosures Concerning s' Financial Analyses</u>

41.     With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the terminal values of KCS; (ii) line items used to calculate the Company's projected Unlevered Free Cash Flows for fiscal years 2021 through 2029; (iii) the inputs and assumptions underlying the use of the range of perpetuity growthrates of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the selection of discount rates ranging from 6.0% to 7.5%; (v) the net debt of the Company as of March 31, 2021; (vi) the number

of fully diluted outstanding KCS common stock; (vii) the Company's preferred equity and minority interest as of March 31, 2021; and (viii) estimate of the Company's weighted average cost of capital.   Registration Statement, 75.

42.    37.   With respect to BofA's *Discounted Cash Flow Analysis* for CN, the Registration Statement fails to disclose: (i) the terminal values of CN; (ii) line items used to calculate CN's projected Unlevered Free Cash Flows for fiscal years 2021 through 2029; (iii) the inputs and assumptions underlying the use of the range of perpetuity growth rates of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the discount rates ranging from 5.5% to 7.0%; (v) the net debt of CN as of March 31, 2021; (vi) the number of fully diluted outstanding Canadian National Railway common stock; and (vii) estimate of CN's weighted average cost of capital. Registration Statement, 77.

43.    These key inputs to BofA's analysis of KCS and CN are material to KCS shareholders, and their omission renders the summary of BofA's *Discounted Cash Flow Analysis* incomplete and misleading.   As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal value…" *Id.*   As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion ***unless full***

> ***disclosure is made of the various inputs in the valuation process, the
> weight assigned for each, and the rationale underlying these choices***.
> The substantial discretion and lack of guidelines and standards also
> makes the process vulnerable to manipulation to arrive at the "right"
> answer for fairness.  This raises a further dilemma in light of the
> conflicted nature of the investment banks who often provide these
> opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, KCS's

shareholders cannot evaluate for themselves the reliability of BofA's Discounted Cash Flow

Analysis, make a meaningful determination of whether the implied equity value ranges reflect

the true value of the Company or was the result of an unreasonable judgment by BofA, and make

an informed decision regarding whether to vote in favor of the Proposed Transaction.

44.     With respect to BofA's *Selected Precedent Transactions Analysis* for KCS, the

Registration Statement fails to disclose: (i) the merger values for each transaction reviewed; (ii)

the consideration paid to the shareholders of the target companies in the selected transactions;

(iii) the estimates of the target companies' EBITDA; and (iv) the closing dates of the selected

transactions.  Registration Statement, 74-75

45.     With respect to BofA's *Wall Street Analysts Price Targets* analysis for KCS, the

Registration Statement fails to disclose: (i) the identity of the analysts reviewed by BofA; (ii) the

price targets for the shares of KCS common stock available as of March 19, 2021; and (iii) the

inputs used to calculate the mid-point cost of equity discount rate of 7.7%.  Registration Statement

76.

46.     With respect to BofA's *Selected Publicly Traded Companies* analysis for CN, the

Registration Statement fails to disclose: fails to disclose: (i) the inputs and assumptions used to

determine the CY2021E Price/EPS multiple reference range of 22.5x to 25.0x; and (ii) the inputs

and assumptions used to determine the 2021E EV/EBITDA multiple reference range of 14.0x to

16.0x.  Registration Statement, 76-77.

47.     With respect to BofA's *Wall Street Analysts Price Targets* analysis for CN, the Registration Statement fails to disclose: (i) the identity of the analysts reviewed by BofA; (ii) the price targets for the shares of CN common stock available as of April 19, 2021; and (iii) the inputs used to calculate the mid-point cost of equity discount rate of 6.7%.  Registration Statement, 78

48.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

53.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) financial projections for KCS and CN prepared by KCS management; and (ii) the key inputs for the financial analyses performed by BofA in support of its fairness opinion.

54.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's common stockholders although they could have done so without extraordinary effort.

55.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to

render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Board and KCS's management all reviewed and assessed financial projections for KCS and CN, and further states that the Board considered the fairness opinion provided by BofA and the assumptions made and matters considered in connection therewith, which included financial projections for KCS and CN. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

56.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

57.     KCS is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

58.     The misrepresentations and omissions in the Registration Statement are material to

Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's stockholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of KCS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of KCS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

20

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

63.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  July 1, 2021                              **MONTEVERDE & ASSOCIATES PC**

                                                                 */s/ Juan E. Monteverde*
                                                                 Juan E. Monteverde (JM-8169)
                                                                 The Empire State Building
                                                                 350 Fifth Avenue, Suite 4405
                                                                 New York, NY 10118
                                                                 Tel: (212) 971-1341
                                                                 Fax: (212) 202-7880
                                                                 jmonteverde@monteverdelaw.com

                                                                 *Attorneys for Plaintiff*